IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **Julius Jones a/k/a Odell Lamon Calvin (K69565),** )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**Supt. Yoksoulian, et al.,** )<br>)<br>Defendants. ) | Case No. 18 C 5822<br><br>Hon. Rebecca R. Pallmeyer |

## ORDER

Defendants' motion to dismiss for failure to state a claim [83] is denied and, because no further briefing is necessary, the motion for extension of time to reply [87] is also denied. Defendants are directed to answer Plaintiff's amended complaint [74] on or before January 8, 2021. As discussed below and in the August 13, 2020 screening order, the court denies Plaintiff's renewed request [85] to add Officer Stubenvol as a Defendant. The status hearing set for 12/18/2020 at 8:30 a.m. stands. The parties shall refer to the docket for call-in instructions.

## STATEMENT

Illinois prisoner Julius Jones a/k/a Odell Lamon Calvin initiated this lawsuit more than two years ago concerning events that occurred while he was detained at the Cook County Jail. Employing the standard applied to motions to dismiss, the court screened Plaintiff's fourth amended complaint on August 13, 2020, and allowed the complaint to proceed in part against Superintendent Yoksoulian and Officers Reilly, Vejzovic, and Jackson [73]. The court, however, limited the scope of the lawsuit to "a failure-to-protect and an excessive restraint claim stemming from the events that, Plaintiff says, caused him to be vulnerable to an inmate-on-inmate assault on May 7, 2018." *Id.*, pg. 3. The court also rejected Plaintiff's attempt to expand the scope of this lawsuit to events following the May 7, 2018 assault, which included claims against Officer Stubenvol, who did not "arrive[] onto the tier" until "Plaintiff was lying on the floor after the assault[.]" *Id.*, pg. 3-4. Plaintiff has now renewed that attempt [85] and Defendants have moved to dismiss [83].

### I.     Motion to Dismiss

Defendants' motion to dismiss does not challenge the fourth amended complaint in its entirety. Instead, the motion seeks to narrow the scope of the litigation in three ways.

Defendants first argue that "Plaintiff's excessive restraint claim should be dismissed as it does not allege a constitutional violation." [83], pg. 2-4. Defendants focus on a narrow set of facts—*i.e.*, that Plaintiff was "blue boxed and shackled while outside his cell for 3 hours on one day." *id.*, pg. 3—and argue that security measures justified the restraints. They rely on case law that pre-dates the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), and ignore the totality of circumstances underlying the claims that the court allowed to proceed.

The court concluded in its August 13, 2020 screening order that "Plaintiff's allegations [] are enough to call into question the reasonableness of the restraints used to secure him to the dayroom table." [73], pg. 3. Although the court did not elaborate on the factual basis for its conclusion, the facts detailed in the order—including but not limited to the prone manner in which Plaintiff allegedly was restrained in an area of the jail accessible to other inmates, the use of full restraints during a time when Plaintiff allegedly was out of his cell for "daily recreation," and the use of full restraints even though Plaintiff's hand was broken and casted—are enough at this juncture to trigger constitutional concerns.

Defendants next argue that Plaintiff's claims against Superintendent Yoksoulian should be dismissed because the alleged facts do not show that Yoksoulian participated in the events underlying Plaintiff's claims. *See* [83], pg. 4-5. Plaintiff's allegations, however, can fairly be read to raise the inference that Yoksoulian directed subordinate officers to place Plaintiff in full restraints and hitch him to the dayroom table on May 7, 2018. Plaintiff also alleged that other inmates had been assaulted while shackled to the dayroom table, suggesting that Yoksoulian was aware of the risks posed by restraining inmates in the dayroom in the manner alleged by Plaintiff. The court must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff's favor" at this juncture. *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016). Plaintiff's allegations are enough to state a failure-to-protect and unreasonable restraint claim against Yoksoulian.

Defendants also argue that the "newly added excessive restraint claim" is barred by the general release in a settlement agreement executed by Plaintiff in *Calvin v. Cook County*, No. 16 C 3166 (N.D. Ill.) (the "Agreement"). *See* [83], pg. 6; *see also* [83-1] ("Confidential Settlement Agreement and General Release" effective Feb. 4, 2019). The Agreement, however, contained exceptions to the general release:

> The parties agree that *Calvin v. Yoksoulin, et al.* (18 C 5820) and *Calvin v. Yoksoulin, et al.* (18 C 5822), which have already been filed, are not barred by the General Release set forth herein.

[83-1], pg. 2.

Illinois law governs the interpretation of contracts, including settlement agreements, executed in Illinois. *Cannon v. Burge*, 752 F.3d 1079, 1088 (7th Cir. 2014). Under Illinois law, a court "must interpret the words of the contract with their common and generally accepted meanings and must construe the words of the contract within the context of the contract as a whole." *Darvosh v. Lewis*, 66 F. Supp. 3d 1130, 1134 (N.D. Ill. 2014) (quoting *William Blair & Co. v. FI Liquidation Corp.*, 830 N.E.2d 760, 770 (Ill. App. Ct. 2005) (internal quotation marks omitted)). "Where a written agreement is clear and explicit, a court must enforce the agreement as written," interpreting the meaning of the agreement as well as the intent of the parties with reference only to the language within the four corners of the written document. *See Cannon*, 752 F.3d at 1088 (collecting cases). If the agreement is ambiguous—that is, if the agreement is susceptible to more than one meaning—it is not subject to resolution as a matter of law. *Id.* at 1088-89; *Darvosh*, 66 F. Supp. 3d at 134 (citing *Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011)).

The unambiguous language of the Agreement creates an exception to the general release for this case, *Calvin v. Yoksoulin, et al.*, No. 18 C 5822 (N.D. Ill.). It does not limit the scope of this lawsuit to a failure-to-protect claim.

Defendants nevertheless ask the court to find that the exception is limited to the failure-to-protect claim that the court allowed in its January 22, 2019 screening order. But the language of the exception sets forth no such limitations. Rather, before entering into the Agreement, Plaintiff had expressed an intent to bring a claim in this case concerning his restraints. *See* [12], Jan. 22, 2019 screening order. The court dismissed the claim without prejudice, noting that Plaintiff's allegations about his restraints were "troubling" but that it was unclear why he included the allegations in his pleading. *Id.*, pg. 3. Thus, on February 4, 2019—the date the Agreement became effective—the posture of this lawsuit allowed for the possibility that Plaintiff could state a claim concerning his restraints.

Accordingly, the court denies Defendants' motion to dismiss for failure to state a claim.

## II. Plaintiff's Request to Add Defendant Stubenvol to This Lawsuit

By order dated August 13, 2020, the court limited this lawsuit to failure-to-protect and unreasonable restraint claims stemming from events that, Plaintiff says, precipitated the May 7, 2018 assault. [73]. The court explicitly dismissed Officer Stubenvol from this lawsuit at that time because Stubenvol was not involved in those events; Stubenvol arrived on the scene following the assault and, according to Plaintiff, attempted to thwart his ability to receive medical care at that time and for some days later. The court explained, in dismissing Stubenvol, that it would not allow Plaintiff to join claims to this lawsuit concerning his medical care or any other events that happened after the alleged assault. *Id.*

Federal Rule of Civil Procedure 54(b) allows a district court, before entry of judgment and at its discretion, to revisit "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties [that] does not end the action as to any of the claims or parties[.]" Court rulings, however, "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988). The court will grant a motion for reconsideration, as relevant here, only when it "has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (citation omitted); *see also Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996).

Plaintiff demonstrated no such thing. His request to add Stubenvol as a defendant to this lawsuit consists solely of reiterating his allegations against Stubenvol and insisting that Stubenvol is a "necessary defendant." He also identifies no *facts*—as opposed to pure speculation—that Stubenvol had any involvement in the events immediately preceding the May 7, 2018 assault. Thus, for the reasons more fully set forth in the August 13, 2020 screening order, the court denies Plaintiff's request to add Stubenvol as a defendant to this lawsuit.

ENTER:

Date: December 11, 2020

REBECCA R. PALLMEYER
United States District Judge

3